UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MICHAEL JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-00056-JRS-MJD |
| | ) | |
| JABKIEWICZ, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Denying Plaintiff's Motion for Summary Judgment, Granting Defendant's Cross-Motion for Summary Judgment, and Directing Entry of Final Judgment**

Plaintiff Christopher Michael Johnson brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging that defendant Deputy Jabkiewicz violated his constitutional right to information privacy by escorting nurses during medication rounds at the Marion County Jail and ordering him to open his mouth to prove that he swallowed his medication. Presently pending before the Court are the parties' cross-motions for summary judgment. Dkts. [47, 48]. For the reasons explained in this Entry, Deputy Jackiewicz is entitled to summary judgment on Mr. Johnson's claim. Accordingly, Mr. Johnson's motion for summary judgment, dkt. [47], is **denied**, and Deputy Jabkiewicz's motion for summary judgment, dkt. [48], is **granted**.

## I.
## Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment

if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and need not "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003). The Court will consider each party's motion individually to determine whether that party has satisfied the summary judgment standard. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (citing *Celotex*, 477 U.S. at 324).

## II.
## Factual Background

The facts supported by admissible evidence and viewed in the light most favorable to the non-moving party are as follows. Mr. Johnson was involved in a shoot-out with the police on December 13, 2017, and spent three weeks in the hospital before being transferred to the infirmary of the Marion County Jail (the "Jail"). *Id.* at 5-6. Shortly after he arrived at the Jail, he was placed in the infirmary wing with approximately 10 other inmates for about three weeks. *Id.* at 7-8.

Throughout his stay in the infirmary, Mr. Johnson periodically took medication. *Id.* When Mr. Johnson was handed medication, deputies would stand at the door to the infirmary. *Id.* at 8-9. Following Mr. Johnson's stay in the infirmary, he was placed in a medical block at the Jail. *Id.* The Marion County Sheriff's Office ("MCSO") requires deputies to escort nurses when they are distributing medication. Dkt. 49-2 at 1; dkt. 49-3 at 1. The MCSO also requires deputies to remain in the nurses' presence to protect them while they distribute medication to inmates. Dkt. 49-2 at 1; dkt. 49-3 at 1. Deputies are not allowed to walk away from nurses when they are distributing medication. Dkt. 49-2 at 1.

While Mr. Johnson was housed in the medical block, Deputy Jabkiewicz would escort nurses to the medical block during medication rounds. *Id.* During those times, Mr. Johnson was in an open area of the medical block where other inmates were standing nearby and outside of their cells. Dkt. 49-1 at 11-12, 25. Mr. Johnson stood in line when waiting for his medication and then approached the nurse when it was his turn to receive medication. *Id.* at 15. Mr. Johnson felt unable to talk privately with the nurses about his concerns because Deputy Jabkiewicz was present during these medication rounds. *Id.* at 18. Johnson submitted healthcare request forms when he had medical concerns. *Id.* at 19-20.

Jail Commander Deputy Chief Tanesha Crear requires MCSO deputies "to view the inside of an inmate's mouth to ensure the inmate has consumed the medication a nurse has provided the inmate ... to ensure that medication is consumed by the person it is prescribed to when medication is being distributed at the Jail." Dkt. 49-3 at 1. Deputy Jabkiewicz regularly checked the inside of other inmates' mouths during medication rounds to confirm that they actually swallowed their medication rather than hiding it. Dkt. 49-2 at 2. Inmates that hide medication inside their mouths may endanger other inmates by selling their medication or endanger themselves by failing to take

necessary medication or saving the medications and overdosing on them. *Id*. Deputy Jabkiewicz was the only person who asked to see the inside of Mr. Johnson's mouth during a medication round. Dkt. 49-1 at 15. Deputy Jabkiewicz told Mr. Johnson that he asked to see the inside of his mouth because a lot of inmates "cheek" their medication and do not take it. *Id*. Deputy Jabkiewicz also told him that he asked to see the inside of his mouth because a lot of inmates abuse their medication. *Id*.

On December 27, 2018, Mr. Johnson refused to show Deputy Jabkiewicz the inside of his mouth during a medication round. Dkt. 49-2 at 2. After Johnson refused to open his mouth during that medication round, an entire block of inmates was returned to their bunks because other inmates became uncooperative and aggressive. *Id*. at 3. Following the incident, Johnson filed a grievance concerning what happened. *Id*. When that grievance was investigated, Deputy Jabkiewicz stated why he had asked to view the inside of Mr. Johnson's mouth. *Id*. At the conclusion of the investigation, Deputy Jabkiewicz was neither disciplined nor asked to stop viewing the inside of Johnson's mouth. *Id*.

### III.
### Deputy Jabkiewicz's Motion for Summary Judgment

Deputy Jabkiewicz has moved for summary judgment on the grounds that the undisputed evidence shows that Mr. Johnson suffered no constitutional violation. He also argues that even if a constitutional violation did occur, he is entitled to qualified immunity because the right to information privacy when receiving medication is not a clearly established right. The Court will address each argument in turn.

#### A. Mr. Johnson's § 1983 Claim

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was

committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred. *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (*citing Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "[T]he first step in any [§ 1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Constitutional claims are to be addressed under the most applicable provision. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005).

Because Mr. Johnson was a pretrial detainee at the Jail at all times relevant to this action, the Fourteenth Amendment governs his claim. *See Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015). Although the Seventh Circuit has not explicitly recognized the viability of any constitutional medical privacy claim for inmates, *see Franklin v. McCaughtry*, 110 Fed. Appx. 715, 718 (7th Cir. 2004), any right to confidentiality or privacy Mr. Johnson has in his medical treatment derives from the Fourteenth Amendment. *See Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 855 (7th Cir. 2017) (constitutional rights as pretrial detainee derive from Due Process Clause of Fourteenth Amendment); *Denius v. Dunlap*, 209 F.3d 944, 960 (7th Cir. 2000) (recognizing a public employee's Fourteenth Amendment right to confidentiality of medical information).

The Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions that "amount to punishment." *Kingsley*, 576 U.S. at 397. A pretrial detainee can prevail by providing objective evidence that the challenged governmental action is not "rationally related to a legitimate, nonpunitive governmental purpose" or that it is "excessive in relation to that purpose." *Id.*; *see also Hardesty v. Kinderman*, 2020 WL 4472996, at *2 (S.D. Ind. Aug. 4, 2020). "[P]rison administrators' interest in prison security and protecting medical staff" are legitimate,

non-punitive penological goals. *Simpson v. Joseph*, 248 Fed. Appx. 746, 747 (7th Cir. 2007); *see also Overton v. Bazetta*, 539 U.S. 126, 133 (2003) (describing "internal security" as "perhaps the most legitimate of penological goals"). Therefore, to establish that a constitutional violation occurred, Mr. Johnson must show that Deputy Jabkiewicz's actions were either not rationally related to the legitimate, non-punitive purpose of ensuring prison security and staff safety or were excessive in relation to that purpose. *See Kingsley*, 576 U.S. at 398. In the context of information privacy, the Seventh Circuit has explained that the "semi-public discussion" of an inmate's medical conditions "would not transgress the constitutional right to information privacy insofar as that right might extend to prisoners." *Franklin*, 110 Fed. Appx. at 718.

Here, the undisputed record shows that the purpose of Deputy Jabkiewicz's actions served the legitimate, non-punitive purpose of maintaining institutional safety and order. Dkt. 49-2 at 2; dkt. 49-3 at 1. Specifically, per the MCSO's policy, Deputy Jabkiewicz escorted nurses who were distributing medication and remained in the room as they distributed the medication in order to protect the nurses' physical safety. Dkt. 49-2 at 2; dkt. 49-3 at 1. Similarly, the undisputed evidence shows that Deputy Jabkiewicz required inmates, including Mr. Johnson, to swallow their medications in his presence for the purpose of preventing inmates from saving, selling, failing to take, or otherwise abusing substances, which is a known safety risk in prisons. Dkt. 49-1 at 15; 49-2 at 2. Finally, to the extent that Mr. Johnson maintains that he could not privately discuss medical concerns with his nurses while Deputy Jabkiewicz remained present during medical rounds, the undisputed evidence shows that MCSO's policy still allowed inmates to communicate privately with medical staff outside the hearing of MCSO deputies or other inmates via a medical request form. Dkt. 49-1 at 19; dkt. 49-2 at 2. Other courts in this Circuit have found that policies similar to the MCSO policies Deputy Jabkiewicz followed here are reasonably related to the

prison's legitimate objective of ensuring safety. *See Eskridge v. Fuqua*, 2012 WL 3913241, at *5 (C.D. Ill. Sept. 7, 2012) (holding that "requiring Plaintiff to take his medicines during med line was reasonably related to the prison's legitimate goal in making sure that Plaintiff takes his medicine"); *Adell v. Hepp,* 2015 WL 6680237, at *1 (E.D. Wis. Nov. 2, 2015) (finding no constitutional violation when a guard stood nearby a medical exam room during the plaintiff's appointments). In short, there is no evidence in the record to suggest that the MCSO's policy was not rationally related or was excessive in relation to the purpose of ensuring prison security and staff safety. Accordingly, no reasonable juror could find that a constitutional violation occurred. *Kingsley*, 576 U.S. at 398; *Simpson*, 248 Fed. Appx. at 747.

In his briefs, Mr. Johnson does not respond to any of the legal arguments presented in Deputy Jabkiewicz's brief and the factual assertions he makes are unsupported by citations to admissible evidence, as is required of him at this stage. *See* Fed. R. Civ. P. 56(e); Local Rule 56-1(e) and (h). Rather, he attempts to admit exhibits about other complaints against Deputy Jabkiewicz that lack any relevance to his claim. *See* dkt. 53-1. He also attempts to admit an exhibit discussing privacy rights under the Health Insurance Portability and Accountability Act ("HIPAA"), *see* dkt. 47-2, which is likewise irrelevant to his claim as neither the MCSO nor Deputy Jabkiewicz are covered entities under HIPAA, and individuals have no private right of action under HIPAA. *See Carpenter v. Phillips*, 418 Fed. Appx. 658, 659 (7th Cir. 2011); *Corey v. Jones*, 2018 WL 659171 (S. D. Ind. February 1, 2018) ("To the extent Plaintiff is attempting to raise a claim under HIPPA, this claim is meritless, as there is no private right of action under that statute"). Accordingly, the Court does not find that Mr. Johnson has raised any triable issue of fact that would preclude summary judgment.

Under these circumstances, there is no evidence from which a reasonable juror could conclude that Deputy Jabkiewicz's actions were objectively unreasonable. Because there is no admissible evidence showing that Deputy Jabkiewicz took any action against Mr. Johnson in a manner that was not rationally related to the legitimate governmental objective of ensuring prison security and personnel safety or was excessive in relation to that objective, Deputy Jabkiewicz is entitled to judgment as a matter of law. *Kingsley*, 576 U.S. at 398. Therefore, the Court **grants** his motion for summary judgment, dkt. [48].

### B. Qualified Immunity Defense

Deputy Jabkiewicz also argues that to the extent Mr. Johnson's constitutional rights were violated, he is entitled to qualified immunity. Dkt. 46 at 12-14; 51 at 1-3. Qualified immunity protects government officials from liability for civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see also Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015). Analysis of the qualified immunity defense requires a consideration of: (1) whether the plaintiff's constitutional rights were violated and (2) whether the rights were clearly established at the time. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).

As the Court previously explained in its Screening Order, *see* dkt. [6], whether prisoners have a clearly established right to information privacy in their prison treatment appears to be an open question in the Seventh Circuit. *See Massey v. Helman*, 196 F.3d 727, 742 n.8 (7th Cir. 1999); *Anderson v. Romero*, 72 F.3d 518, 522-23 (7th Cir. 1995). However, the Court does not reach that question in this case. For the reasons addressed above, there was no constitutional violation, *see Jackson v. Parker*, 627 F.3d 634, 635 (7th Cir. 2010); *Suarez v. Town of Ogden Dunes*, 581 F.3d 591, 595 (7th Cir. 2009), so a qualified immunity defense is not necessary. *Much v. Vill. of Oak*

*Brook*, 650 F.3d 1053, 1057-58 (7th Cir. 2011).  Accordingly, the Court need not address Deputy Jabkiewicz's arguments concerning this defense.

### IV.
### Mr. Johnson's Motion for Summary Judgment

For the same reasons detailed above that Deputy Jabkiewicz is entitled to summary judgment, Mr. Johnson is not.  Accordingly, Mr. Johnson's motion for summary judgment, dkt. [47], is **denied**.

### V.
### Conclusion

For the reasons stated above, the plaintiff's motion for summary judgment, dkt. [47] is **denied**, and defendant's motion for summary judgment, dkt. [48], is **granted**.  Final judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date:  9/28/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

CHRISTOPHER MICHAEL JOHNSON
795224
MARION COUNTY JAIL
MARION COUNTY JAIL
Inmate Mail/Parcels
40 South Alabama Street
Indianapolis, IN 46204

Traci Marie Cosby
OFFICE OF CORPORATION COUNSEL
tmcosby@widener.edu

Andrew J. Upchurch
OFFICE OF CORPORATION COUNSEL
andrew.upchurch@indy.gov